## A. J. Lowry v. S. M. C. Cobb and her Husband, O. B. Cobb.

Plaintiff and defendants owned a plantation in partnership. Difficulties arising between them, the property was placed in the hands of a receiver, and arbitrators, clothed with the powers of amicable compounders, appointed. After flagrantly violating the award and usurping the administration of the property, defendants confessed a judgment in favor of a mortgage creditor, who seized and sold the property. At the sale, plaintiff, through friends, bought the property, and defendants claimed the benefit of the purchase for the partnership.

A partner has no right to prefer his own interest to that of the firm, nor deprive the partnership of a profitable bargain, by taking it to his own account.

But (*by the Court,*) plaintiff had faithfully submitted to the award, by which the partnership property was placed under the administration of a receiver, and which award defendants were bound by every consideration of partnership, and moral duty to respect. Without any just cause, they wrested the possession from the receiver, diverted to their own use the crops which had been sacredly appropriated to purposes vitally necessary to the protection of the partnership interests—awakened the distrust of an important creditor, and occasioned, if not invited, a forced sale by this creditor of the partnership estate, under his mortgage. When plaintiff thus saw his own ruin impending by the bad faith of his co-proprietors, who thus flagrantly violated the compact for their common preservation, the instincts of self-defence necessarily compelled him to seek the assistance of his friends ; and having sheltered himself, in some degree, through their interposition, from the calamity which would otherwise have crushed him, the promoter of the mischief has no equity to share the shelter with him.

The penalties stipulated in a submission which is partially executed, can be modified by the discretion of the court. Code, 2123.

APPEAL from the District Court of the Parish of Madison, *Perkins, Jr.,* J. *Stacy & Sparrow,* for plaintiff and appellant. *W. Perkins,* and *Bemiss,* for defendants.

Slidell, C. J. We refer to the cases of *Cobb* v. *Parham,* 4 An. 148, and *Parham & Lowry* v. *Cobb,* 7 An., for a more minute detail of the origin of a litigation of which the present suit is a sequel. By a reference to those cases, it will be found that *Lowry* and Mrs. *Cobb* were joint proprietors of a large estate called the Buckhorn plantation ; that they quarrelled, and after an acrimonious litigation, submitted their differences to arbitrators, clothed with the authority of amicable compounders ; that these arbitrators made a very discreet and equitable award, by which both proprietors were divested, for a stated time, of the control of the estate, a receiver was appointed, and a judicious system of administration prescribed, which, if undisturbed, would have probably resulted to the great advantage of both parties ; that Mrs. *Cobb* and husband, flagrantly violated the award, usurped the administration of the common estate, and appropriated its revenues to their own use.

Soon after this unjustifiable breach of the award, we find Mrs. *Cobb* and her husband, confessing a judgment in favor of a mortgage creditor, who, until then, it would seem, was satisfied with the receivorship, and willing to look to the application of the revenues of the estate in the manner prescribed by the award. The result of this confession was a sale, in 1849, of a large portion of the estate by the Sheriff. It was adjudicated to *Morancy,* on twelve months' credit, at $41,775.

It appears that *Morancy* was a friend and connection of *Lowry,* and that he and two other persons interested in this purchase, have an understanding with *Lowry,* to convey the interest thus acquired to him, upon reimbursement of

the amount paid, and it may be inferred from the evidence, that this understanding existed at the time of the Sheriff's sale; and one of the questions most urgently presented in argument for the defendants is, whether they have a right to treat this purchase as one made by *Lowry* and inuring to the benefit of the partnership.

It is true, as asserted by the defendants, that a partner has not a right to prefer his own interest to that of the firm, nor deprive the partnership of a profitable bargain, by taking it to his own account. The doctrine is obviously deducible from the nature of the contract of partnership, on entering into which, the partner promises to his associates his efforts for the common benefit. This promise he would violate, by seeking his individual advantage to that of the partnership. Hence, the books abound in cases where a partner who, while his relations as such existed, has stipulated clandestinely for any private benefit to himself, has been compelled to divide such gains with his associates. But we conceive that the circumstances of the present case do not fall within the rule, and that by her own inequitable conduct the defendant excluded herself from its application. *Lowry* had faithfully submitted to the award, by which the partnership property was placed under the administration of *Parham*, the receiver, and which award Mrs. *Cobb* was bound, by every consideration of partnership and moral duty, to respect. Without any just cause, she and her husband wrested the possession from *Parham*, diverted to their own use the crops which had been sacredly appropriated to purposes vitally necessary to the protection of the partnership interests, awakened the distrust of an important creditor; and occasioned, if not invited, a forced sale by this creditor of the partnership estate under his mortgage. When *Lowry* thus saw his own ruin impending by the bad faith of his co-proprietor, who had thus flagrantly violated the compact for their common preservation, the instinct of self-defence necessarily compelled him to seek the assistance of his friends; and having sheltered himself in some degree, through their interposition, from the calamity which would otherwise have crushed him, the promoter of the mischief has no equity to share that shelter with him. A contrary doctrine would hold out to bad faith the chance of a successful wrong, with a certainty of impunity in case of failure.

It is said that on the day of sale, *Cobb* offered arrangements to which, if *Lowry*, had acceded, a sale in block could have been avoided, a better price realized, and further indulgence from the creditors gained. But the evidence satisfies us, that *Cobb* was not prepared to carry out these arrangements, if *Lowry* had acceded; and certainly *Lowry's* experience was not such as to authorize him to entertain the propositions with any confidence that they would be fulfilled by his adversaries.

We conclude, therefore, that the defendant was not entitled to share in the benefit of the stipulation made by *Morancy* and his associates in favor of *Lowry*.

With regard to the damages claimed by *Lowry* for the divestiture of his title, by the judicial sale, to pay Mrs. *Cobbs'* debt, we think his estimate of them exaggerated. The property was not bought by a stranger, but by his own friends, acting through *Morancy*, who stand ready to reinvest him with the legal title, whenever he shall repay their advances for his benefit. This is conclusively shown by their intervention in this cause, and by the testimony of *Morancy* and others. At the same time, his position as owner of the mere

LOWRY
v.
COBB.

equitable title, instead of the title in his own name which he previously held, involves some disadvantages which we think it our duty to take into account.

We have also to allow in the balance we are to ascertain, the sum of $2,101 97, being amount of balance ascertained by the award of the arbitrators, which should bear interest at six per cent. from 11th of March, 1847.

Also, one half of proceeds of the crop of 1847, appropriated by *Parham* to the payment of Mrs. *Cobb's* debt, to *Burke, Watt & Co.*, and *Hynes*, to wit, $8,289 74, to the former, and $400 to the latter, the one-half is $4,344 67, which should bear interest at six per cent. from the 1st of February, 1848.

We have also in the estimate of *Lowry's* damages, taken into consideration the expensive and vexatious litigation in which he was involved by the wrongful injunction suit. It will be observed, that with regard to the suits on the the appeal bond and the injunction bond, we have treated the damages there allowed, as compensating for the share of *Lowry* in the crop of 1848, appropriated by Mrs. *Cobb* to her own use.

There is some obscurity perhaps in the award with regard to an item of $14,000, appropriated to the payment of the debt to *Burk, Watt & Co.*, for one-half of which credit is claimed by *Lowry*. Our conclusion is, that this was taken into consideration by the arbitrators, and allowed before striking the balance of $2,101 in favor of *Lowry*. If otherwise, we are at a loss to understand why the arbitrators should have made no provision for securing it by mortgage, nor for the rate of interest upon it.

The claim of *Lowry* for the one-half of the crop of 1848, is disposed of in another suit, No. 3007, of the docket of this court; but provision for its payment in the partition will be made in this decree.

As to the credits to which Mrs. *Cobb's* succession is entitled, they arise from her interest in the crops of the unsold portion, and the overplus of the price of the judicial sale remaining in *Morancy's* hands, after satisfying the debt to the *Mitchell* heirs.

It will be observed, that the Sheriff's sale to *Morancy*, comprised a portion only of the joint property. After that sale was made, *Lowry* conveyed his interest in the unsold residue, to *Morancy, Maher* and *Minnis;* and it appears that since that period, *Morancy* has been in possession of the whole estate, acting in reality for the benefit of *Lowry*, who will ultimately reacquire the entire interest on reimbursing his friends for their advances. As one-half of the unsold portion of the Buckhorn estate belonged to Mrs. *Cobb*, it is obvious her succession is entitled to the one-half of the net revenues of that portion, and that under the circumstances of the case, her net share of these revenues must be carried to her credit in account with *Lowry*.*

We have disregarded the claims set up by both parties for the penalties of $25,000, stipulated in the submission to arbitrators, in the event of a violation of the award. Without entering into the consideration of any other grounds for this course, it is sufficient to say that the award was partially executed, and in such case the modification of the penalty is a matter of judicial discretion. Civil Code, 2123. In striking the balance hereafter stated, we have given both parties such equitable indemnification as, under the circumstances, we consider them entitled to receive, and down to such period as the evidence

---

*The plaintiff and defendants admit in their printed arguments, that it would be fair to consider the sold and the unsold portions of Buckhorn, to be about equally productive, and that the property unsold should share equally the revenues and expenses of the whole.

enables us to embrace. Both parties have expressed the desire that their mutual claims should be liquidated as far as possible, and we have endeavored to do so with a just and equitable reference to the peculiar features of this protracted litigation.

In our estimate, revenue of the credits to which Mrs. *Cobb* is entitled, we have only been able to embrace the crops of 1849, 1850 and 1851. We have no satisfactory data for crediting her portion of the crops after that of 1851; the credit on that score must be reserved for future examination.

We concur with what was said in *Lowry* v. *Harris*, — Annual, respecting the impracticability of carrying out specifically the provisions of the award touching the partition of the property, especially after the long interval which has already elapsed, and in view of the delay which will still occur; and are of opinion, with reference to all the circumstances, that a partition should be effected by a judicial sale for cash, and without appraisement.

Considering the partnership character of the property under the provisions of the award, and the conditions thereby provided and imposed for *Lowry's* security, we are of opinion that *Lowry* should be decreed to be a creditor, with mortgage and privilege for his ascertained balance and total claim, to be enforced in the partition.

After the allowance of all the credits of every nature to which the parties are entitled respectively, excluding only the crop of 1848, which has been separately settled as above mentioned, and the crop subsequent to that of 1851, we decree a balance in favor of *Lowry*, on the 1st day of January, 1852, of $22,769 48, which is to bear six per cent. interest from that date, and subject to a reduction to be hereafter ascertained in the court below, for the share of Mrs. *Cobb's* succession in the net crops subsequent to that of 1851, being one-fourth of the entire crop of the whole estate, sold and unsold.

It is therefore decreed, that the judgment of the District Court be reversed, and that the costs of appeal be paid by the defendants.

It is further decreed, that the succession of *Sarah M. C. Cobb* is indebted to the said *Alfred J. Lowry*, in the sum of $22,769 48, with interest thereon at the rate of six per centum per annum, from the 1st day of January, 1852, subject to such credits as may hereafter be ascertained in favor of said succession, for its fourth interest in the net crops of the Buckhorn plantation, subsequent to the crop of 1851; and that for the indebtedness aforesaid, and also the judgment in the suit No. 3007 hereinafter mentioned, the said *Lowry* be paid as a creditor, with mortgage and privilege out of the proceeds of the judicial sale to be made to effect a partition herein.

It is further decreed that, in order to effect a partition, all the property held jointly between the said *Lowry* and said Mrs. *Cobb*, and which remained after the judicial sale of part thereof, made to *H. P. Morancy*, on the 2d day of June, 1849, whereof a copy is of record in this cause, be sold by the Sheriff on the first Saturday of January, 1855, for cash, and without appraisement; the proceeds of said sale, after paying the costs thereof and the costs of this suit in the court below, to be applied first to the payment of the said balance in favor of said *Lowry*, and interest as aforesaid, (less such deduction as may hereafter be decreed for credits hereafter to be ascertained as above provided, in favor of said succession of Mrs. *Cobb*,) and also to the payment of the amount of a judgment, interest and costs, rendered in favor of said *Lowry*, in the suit of said *Lowry* v. *Cobb et als.*, No. 3007 of the docket of this court, to

wit, the sum of $5,959, with five per cent. interest per annum, from the 30th of April, 1852, and costs; the residue, if any, of the proceeds of said sale, to be equally divided between the said *Lowry*, and the said succession of Mrs. *Cobb*.

And it is further decreed, that this cause be remanded to the District Court for further proceedings, pursuant to this decree; the rights of the said *Morancy*, *Maher*, and the *Succession of Minnis*, to intervene and claim out of the proceeds of said sale coming to said *Lowry*, any balance that may be due to them by the said *Lowry*, being reserved to them.

### AMENDED DECREE.

It is decreed that the judgment in this cause rendered on the 14th June, 1854, be amended so as to read as follows.:

. It is decreed, that the judgment of the court below be reversed, and that the costs of appeal be paid by the defendants.

It is further decreed, that the succession of *Sarah M. C. Cobb*, is indebted to the said *Alfred J. Lowry*, in the sum of $22,769 48, with interest thereon at the rate of six per centum per annum, from the 1st day of January, 1852, until paid, subject to such credits as may hereafter be ascertained in favor of said succession, for one-fourth of the net crops of the Buckhorn plantation, subsequent to the crop of 1851; and that for the indebtedness aforesaid, and also the judgment in the suit No. 3007, hereafter mentioned, the said *Lowry* be paid as a creditor, with mortgage, out of the share of Mrs. *Cobb's* succession, in the proceeds of the judicial sale to be made to effect a partition herein.

It is further decreed, that in order to effect a partition and satisfaction of the plaintiff's claim. all the property held jointly between the said *Lowry* and said Mrs. *Cobb*, and which remained after the judicial sale of part thereof, made to *H. P. Morancy*, on the 2d of June, 1849, whereof a copy is of record in this cause, be sold by the Sheriff, on the first Saturday of February, 1855, for cash, and without appraisement; the proceeds of said sale, after paying the costs thereof, and the costs of this suit in the court below, to be distributed and applied as follows : one-half of said net proceeds to be paid to the said *Alfred J. Lowry* ; the other half of said net proceeds, being for the share of said Mrs. *Cobb's* succession, to be applied, first, to the payment to said *Lowry*, of the aforesaid balance of $22,769 48, with interest as aforesaid, (less such deduction as may be hereafter decreed for credits hereafter to be ascertained as above provided in favor of said succession of Mrs. *Cobb*,) and also to the payment to said *Lowry*, of the amount of a judgment, interest and costs rendered in favor of said *Lowry*, in the suit of said *Lowry* v. *Cobb et al.*, No. 3007 of the docket of this court, to wit, the sum of $5,959, with five per cent. interest per annum from the 30th of April, 1852, until paid, and costs; the residue, if any, of the said share of said Mrs. *Cobb's* succession in said net proceeds, to be paid to her succession.

And it is further decreed, that this cause be remanded to the court below for further proceedings, pursuant to this decree; the rights of the said *Morancy*, *Maher*, and.the *Succession of Minnis*, to intervene and claim out of the proceeds of said sale coming to said *Lowry*, any balance that may be due to them by said *Lowry*, being reserved to them.