607 So.2d 587 (1992)
James H. THIBAUT, Margaret Thibaut Watson, Mary Elizabeth Thibaut Rives, the Constance Elizabeth Thibaut Trust, the Sally Clarice Thibaut Trust, Alma Louise Thibaut Trust, and the David D. Thibaut, Jr. Trust
v.
Thomas A. THIBAUT, Michael Smith, III, Eugenia Smith Mueller, Jane Thibaut Boyce, John E. Thibaut, Thibaut, Inc., Thibaut Oil Company, Inc. and Thibaut Oil Company.
Nos. 90 CA 0904, 90 CA 0905, 91 CA 0732.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Rehearing Denied December 9, 1992.
Writ Denied February 11, 1993.
*590 William H. Reinhardt, Jr., Jeanne-Marie Zeringue, Metairie, Alfred Landry, New Iberia, Vincent Sotile, Talbot, Sotile, Carmouche, Marchand & Marcello, Donaldsonville, for plaintiffs.
*591 Duncan M. Smith, Jr., Lafayette, for Mary T. Rives.
Michael Rubin, Baton Rouge, for defendants.
H. Alston Johnson, III, Baton Rouge, for John E. Thibaut, Jane T. Boyce.
Lew Anne Lester Greco, James C. Percy, Baton Rouge, for Thibaut Oil Co. in Liquidation.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
LOTTINGER, Judge.
This is a commercial dispute arising out of the liquidation of a family owned petroleum distributorship. This action commenced as a suit for an accounting in a partnership, damages for trade name infringement, damages for unfair trade practices, damages in tort, and preliminary and permanent injunctions. The original plaintiffs are James H. Thibaut, Margaret Thibaut Watson, Mary Elizabeth Thibaut Rives, the Constance Elizabeth Thibaut Trust, the Sally Clarice Thibaut Trust, the Alma Louise Thibaut Trust, and the David D. Thibaut, Jr. Trust, hereinafter collectively referred to as the James Group or the plaintiff partners. The defendants are Thomas A. Thibaut, F. Michael Smith, III, Eugenia Smith Mueller, Jane Thibaut Boyce, John E. Thibaut, Thibaut, Inc., and Thibaut Oil Company, Inc., hereinafter collectively referred to as the Thomas Group. Thibaut Oil Company Partnership was also named originally as a defendant. Of this group, the following defendants will be collectively referred to as the Boyce Group Jane Thibaut Boyce, John E. Thibaut, and Thibaut, Inc.
Three appeals by the defendants are currently pending before this court. From a judgment dismissing the defendants' reconventional demand, defendants have filed appealCA 90 0905. From a judgment on the merits in favor of the plaintiffs, the defendants have taken a second appeal CA 90 0904. The third appeal, CA 91 0732, is from an adverse judgment setting attorneys' and expert witness fees. These three appeals have been consolidated by this court for judicial efficiency.

FACTS
Thibaut Oil Company, the partnership, is an ordinary Louisiana partnership organized under an unrecorded Agreement of Partnership dated February 2, 1942. The Agreement of Partnership was amended by Agreement of Compromise and Settlement dated August 26, 1966. The Agreement of Partnership provides for three methods of termination: (1) unanimous consent of the partners, (2) written concurrence of the partners who own at least two-thirds of the total partnership interest, or (3) written notice by the partner wishing to terminate it one year in advance of its fiscal closing.
In a letter dated December 29, 1983, the James Group gave notice of its intent to terminate the partnership to the principal office of the partnership. The James Group collectively owned 50% of the partnership.[1] The James Group failed to specify which of the three methods of termination it intended to use. By letter dated December 30, 1983, Thomas A. Thibaut, a 15% partner, gave notice of his intent to terminate the partnership. The language contained in this letter evidences Thomas A. Thibaut's intent to utilize the third method of termination listed above"one year's notice" method.
After these notices were given, the James Group began negotiating with the attorney for the Thomas Group in an effort either to resolve the problems affecting the partnership or to reach an agreement for the orderly dissolution of the partnership. These negotiations were never formally broken off. In October 1984, the remaining members of the Thomas Group making up the remaining 35% ownership of the *592 partnership[2] served written notice on the partnership of its intent to terminate the partnership. The James Group had arranged for an audit to be performed and were awaiting the final draft of the audit when certain events transpired. The James Group alleges that it lacked any knowledge of these events prior to their occurrence.
On October 15, 1984, the Thomas Group filed a petition for liquidation of the partnership. In this petition, it alleged that Thomas A. Thibaut, as managing partner of the Thibaut Oil Company, had received written notice from all partners of their intent to terminate the partnership thereby meeting the unanimous consent requirement for termination. In support of this allegation, the Thomas Group attached the James Group's letter dated December 29, 1983, as well as letters from the defendant partners[3]. Prior to the October 15, 1984 petition for liquidation, the Thomas Group and the James Group each had formed a separate "shelf" corporation.[4] Each group contemplated the demise of the partnership and anticipated the continuation of the business of the partnership in the form of a corporation.
In late August or early September, 1984, while the audit was still ongoing, the defendants conducted secret meetings in which to devise their plan to take over the partnership's business upon dissolution of the partnership. The effective implementation of their plan required that certain actions be undertaken by the defendants to put Thibaut Oil Company, Inc. in a position to take over the business of the partnership on the day that the petition for liquidation was filed. As part of its initial plan, the Thomas Group contacted Shell Oil Company about a jobber contract. Thomas Thibaut contacted a friend and business associate, Hartman, to obtain a location for his new distributorship and proceeded to fence in a lot, put up a shed, an office, storage tanks, piping, and pumps at the Hartman location in Sunshine Industrial Park. The defendants wrote checks on their personal accounts to buy various equipment to use in their new distributorship. The intent was that this equipment belong to the Thibaut Oil Company, Inc.
Furthermore, as part of their scheme to secretly take over the partnership, the Thomas Group, on September 27, 1984, arranged for the partnership to sell a 30,000 gallon capacity propane tank to Churchill and Thibaut, Inc. for use by it as an anhydrous ammonia tank. The September sale was made at an unusual time considering the fact that the anhydrous ammonia season does not begin until March. Churchill and Thibaut, Inc. in turned leased the propane tank that it had purchased from the partnership to the new corporation.
The plaintiffs' petition alleges that on the same day on which the petition for liquidation was filed, October 15, 1984, Thomas A. Thibaut mailed a letter to all partners of the partnership announcing:
As of this day I have received formal notices from all partners comprising the Thibaut Oil Company partnership informing me of their unanimous desire to terminate the partnership. I have, therefore, upon advice of counsel and in accordance with the law, petitioned the court to appoint Arthur A. Lemann, Jr. to liquidate and distribute the assets of the Company.
I enclose a check representing your pro rata share of the cash available for distribution at this time.

*593 I consider my duties as your managing partner to be at an end, except in aid of liquidation.
Approximately $600,000.00 in cash was distributed with this letter to the partners as their pro rata share. On October 15, 1984, Thomas A. Thibaut discontinued his duties as managing partner, discharged partnership employees, parked its trucks, and shut down its operation with no provision for service to partnership customers. The James Group alleges that Thomas Thibaut lacked authority to make such decisions.
On October 15, 1984, Thibaut Oil Company, Inc., the corporation established by the Thomas Group, mailed a letter addressed to "Valued Customers and Friends," stating that the Thomas Group had "banded together" to continue through the corporation "the dependable service," which the partnership had rendered in the past. The names and addresses of the partnership's customers were obtained from the partnership's customer list.
On the same day the partnership's employees were fired, these same employees were hired as employees of the new corporation. Thibaut Oil Company, Inc. began serving the same outlets which had previously been served by the partnership. By October 15, 1984, the corporation had acquired the Shell job contract and was operating as the Shell jobber. In fact, the Shell contract was signed on the day that the petition was filed.
Meanwhile, on December 7, 1984, the James Thibaut Group commenced this action with the filing of a petition for declaratory judgment, preliminary and permanent injunctions, and accounting for profits. In this petition, the plaintiffs alleged breach of fiduciary duty by Thomas A. Thibaut and F. Michael Smith and violation of unfair trade practices.
Although the temporary restraining order sought by the James Group was issued, it was subsequently recalled by the trial court on its own motion on December 19, 1984. On January 7, 1985, the dilatory exception raising the objection of prematurity and the peremptory exception raising the objection of no right or cause of action that were filed by counsel for the Thomas Group were overruled. On February 20, 1985, a preliminary injunction against the Thomas Group was granted thereby restraining them from using the assets of the partnership. This judgment was affirmed by this court in an unpublished opinion, Thibaut v. Thibaut, 490 So.2d 1200 (La. App. 1st Cir.1986).
On October 8, 1985, approximately one year after the liquidation proceedings were instituted, a liquidation sale was held pursuant to the trial court's order of liquidation. At the liquidation sale, the defendants as a group purchased all of the assets of the partnership excepting only the cash remaining in the company, the accounts receivable, certain delineated physical assets of the company, and any and all claims against the partners arising before the date of the judgment of liquidation, November 26, 1984.
On October 15, 1985, the James Group filed a supplemental and amended petition for damages for breach of fiduciary duty, for conversion of partnership assets, and for violation of the Unfair Trade Practices and Consumer Protection Law (UTACPL), La.R.S. 51:1401-1418. The petition sought to join the partnership's liquidator as a party plaintiff under La.Code Civ.P. arts. 641, 642, and 644. On October 20, 1986, more than one year later, the attorney for the liquidator filed a Motion and Order to be joined as a party plaintiff, which was signed. This Motion and Order was never served (other than by mail) on counsel for the Thomas Group. In response to the James Group's supplemental petition, the Thomas Group responded with the peremptory exception raising the objections of no cause and no right of action. These exceptions were overruled on February 25, 1987.
On April 13, 1987, the Thomas Group filed an answer, reconventional demand, and third party demand to the plaintiffs' petition and supplemental petition. The answer denied the allegations set forth in the petition and supplemental petition. The reconventional demand named all members of the James Group as defendants-in-reconvention, and named David D. Thibaut as a *594 third party defendant. The answer contained numerous affirmative defenses. The reconventional and third party demands alleged five independent causes of action. Counsel for the James Group filed the peremptory exception raising the objections of no cause of action, res judicata, and prescription to the defendants' reconventional demand. David D. Thibaut did not answer or file any exception to the third party demand.
In addition to filing its answer and reconventional demand on April 13, 1987, the Thomas Group filed a motion for recusal of the trial judge on the grounds that the trial judge (1) was a material witness with respect to certain reconventional demands asserted against the plaintiffs and the third party demand asserted against David D. Thibaut, (2) was biased in favor of counsel for plaintiffs, and (3) may be called as a material witness with respect to the reconventional and third party demands for wrongful issuance of a temporary restraining order. Judge Goldsmith denied this motion on October 19, 1987. However, this court ordered that the defendants' motion to recuse be transferred to Judge John L. Peytavin's division for hearing pursuant to the defendants' application for supervisory writs. Thibaut v. Thibaut, CW 87 1632, (La.App. 1st Cir. December 2, 1987). On November 23, 1988, Judge Peytavin denied the motion for recusal.
On June 20, 1989, the exceptions filed by the James Group were sustained, and the defendants' reconventional demand was dismissed. In the trial court's written reasons for judgment, the third party demand filed against David D. Thibaut was dismissed despite the fact that David D. Thibaut did not answer or oppose same. From this judgment, the Thomas Group filed a writ application. Writs were denied on the basis that the trial court ruling was a final appealable judgment. Thibaut v. Thibaut, CW 89 1080, (La.App. 1st Cir. July 7, 1989). The Thomas Group then filed a suspensive appeal from this judgment which is currently before this court, CA 90 0905. In connection with that appeal, the Thomas Group sought a continuance of the trial which was scheduled to commence on July 17, 1989, until such time as this court could rule on the June 20, 1989 judgment sustaining the plaintiffs' exceptions and dismissing its reconventional demand. This motion was denied.
In a motion in limine filed on July 12, 1989, the Thomas Group sought a pretrial determination as to whether it would be permitted to prosecute its reconventional and third party demands, and whether it would be permitted to introduce evidence and testimony supporting its affirmative defenses. The trial judge denied the defendants' motion in limine with respect to admission of evidence in support of their reconventional demand. The trial judge referred to the merits the issue of whether or not it could present evidence and testimony in support of its affirmative defenses. This ruling is also the subject of the suspensive appeal, CA 90 0905, taken by the defendants from the trial court's dismissal of their reconventional demand.
Refusing to give any suspensive effect to the above appeal, the trial judge proceeded with a trial on the merits. At the completion of the trial on the merits, the jury found that the defendants had breached a fiduciary duty owed to the plaintiffs under La.Civil Code art. 2809 and violated the UTACPL, thereby causing $2,200,000 in damages. The damage award was allocated as follows:

 Breach of Violation
 Fiduciary Duty of UTACPL
 75% 25%
Partnership $1,402,500 $495,000
Plaintiff partners 247,500 55,000
 __________ ________
Total $1,650,000 $550,000

*595 In its special verdict form, the jury attributed liability for damages to the defendants in the following percentages:

 Breach of Violation
 Fiduciary Duty of UTACPL
Thomas A. Thibaut 50% 50%
F. Michael Smith 25% 25%
Thibaut, Inc. 5% -
Jane Thibaut Boyce 15% 2%
Eugenia Smith Mueller 5% 1%
John E. Thibaut - 2%
Thibaut Oil Company, Inc. - 20%

The trial court entered a final judgment on August 21, 1989. The percentages set by the jury were not recited in the judgment. Rather, the judgment provided for "in solido" liability. The judgment specifically provided that attorneys' fees, expert witness fees, and costs were recoverable; however, the amount of such recovery was to "be fixed by rule to show cause to be heard by this Court on the earliest available date."
Upon the trial court's denial of the defendants' motion for new trial, the defendants timely obtained an order of appeal on October 6, 1989. A suspensive appeal bond was timely posted on October 10, 1989. After the order of suspensive appeal was entered and the appeal bond was filed, the trial judge signed a second judgment on October 20, 1989, in which he amended the August 21, 1989 judgment on the merits to reflect the percentages assigned by the jury. Defendants, Jane Thibaut Boyce, Thomas A. Thibaut, and Thibaut Oil Company, Inc., filed a motion for appeal from the October 20, 1989 judgment on the ground that the judgment is invalid as the court lacked jurisdiction.
On September 19, 1989, a rule to fix attorneys fees, expert witness fees, and costs, except for fees of the attorney for the liquidator, was tried and submitted, and on April 23, 1990, a rule to fix attorneys fees for the liquidator of the partnership was tried and submitted. On November 2, 1990, the trial court entered judgment awarding $183,333.33 in attorneys' fees under the UTACPL, of which $20,000 are to be paid to the liquidator of the partnership for his services as an attorney. In addition, the trial court awarded expert witness fees of $15,000$10,000 to Drex Martin, $2,500 to Dr. G. Randolph Rice, and $2,500 to Patrick Richard. From this judgment, the defendants also suspensively appeal, CA 91 0732. The following appeals by the defendants have been consolidated by this court: CA 90 0904, CA 90 0905, and CA 91 0732.

ISSUES ON APPEAL
The various assignments of error stated in briefs filed by the appellants present the following issues:
1. The trial court and the jury erred in finding defendants breached a fiduciary duty by competing with the partnership in liquidation.
2. The trial court erred in allowing any recovery for unfair trade practices against the defendants.
3. The trial court erred in allowing any recovery for unfair trade practices against the defendants because its claim for damages had perempted.
4. The trial court erred in allowing the plaintiff partners to recover for unfair trade practices against the defendants, because: (a) the Unfair Trade and Consumer Protection Law does not provide a remedy to the individual partners, *596 and (b) the plaintiff partners had no right of action for unfair trade practices allegedly committed against the partnership.
5. The jury's verdict is erroneous in that it awarded damages to the plaintiff partners individually, absent any evidence as to the occurrence of individual damages separate from the alleged damage to the partnership.
6. The jury was clearly erroneous in awarding damages against Thibaut Oil Company, Inc. and John E. Thibaut for unfair trade practices since the partnership transferred all claims it had against any nonpartner in the liquidation sale.
7. The jury's verdict is erroneous in awarding damages against Jane Thibaut Boyce and Eugenia Smith Mueller since there was no evidence that they caused damages under any theory of law.
8. The trial court erred in sustaining the plaintiffs' exceptions of prescription, no cause of action, and res judicata and in dismissing the defendants' reconventional demand.
9. The trial court erred in refusing to allow defendants to introduce evidence in support of their affirmative defenses and reconventional demand, in refusing to allow defendants to prove the comparative fault of the James Group and the liquidator, and in refusing to allow defendants to present additional relevant testimony.
10. The trial court erred in refusing to give requested jury instructions and interrogatories, in giving incomplete and insufficient instructions regarding the law, and in giving instructions that made factual determinations for the jury and instructed the jury erroneously as to the law.
11. The trial court erred in refusing to allow the defendants to present evidence establishing value of the partnership and in refusing to allow defendants to introduce evidence of the value of comparable oil distributorships in the area.
12. The jury erred in its assessment of the level of damages to the plaintiffs.
13. The trial court erred in holding the defendants solidarily liable.
14. The trial judge erred in issuing a second judgment after it no longer had jurisdiction over the case.
15. The trial judge erred in denying the defendants' motion to recuse Judge Goldsmith.
16. The trial judge erred in awarding attorneys' fees to the plaintiffs under the Unfair Trade and Consumer Protection Law, or alternatively, in awarding excessive attorneys' fees.
17. The trial judge erred in awarding excessive expert witness fees.
These issues can be separated into six main areas of discussion(1) denial of a fair trial, (2) errors made in rendering judgments, (3) basis for the award of damages, (4) damages, (5) Unfair Trade and Consumer Protection Law, and (6) expert witness fees.

I. DENIAL OF A FAIR TRIAL
The defendants contend that they were denied a fair trial as a result of the trial judge's dismissal of their reconventional demand, erroneous instructions and interrogatories to the jury, and refusal to allow them to introduce certain evidence.

A. DISMISSAL OF DEFENDANTS' RECONVENTIONAL DEMAND
The defendants contend that the trial court erred in sustaining the plaintiffs' peremptory exception raising the objections of no cause of action, res judicata, and prescription.
Plaintiffs filed suit on December 7, 1984. Plaintiffs supplemented their original petition on October 15, 1985. On March 26, 1986, the defendants filed the peremptory exception raising the objections of no cause of action and no right of action. The defendants exceptions were overruled on February 26, 1987. On April 13, 1987, within 90 days of the overruling of the defendants' exceptions, the defendants filed an answer, reconventional demand, and third party demand. In response, the plaintiffs *597 filed the peremptory exception raising the objections of no cause of action, res judicata, and prescription. These exceptions were maintained on June 20, 1989.
The defendants' incidental demands rest upon five separate bases: (1) abuse of process; (2) abuse of rights; (3) wrongful issuance of a temporary restraining order; (4) interference with business relations; and (5) unfair trade practices. All of these claims are in tort; therefore, they must be asserted within the one year prescriptive period. La.Civ.Code art. 3492. All of the acts complained of by the defendants took place over two years prior to the date of the filing of the reconventional and third party demands.[5]
When an exception has been filed by the defendant prior to answer, La.Code Civ.P. art. 1001 allows the defendant to wait until the trial judge has ruled on his exceptions before he is required to file an answer. It is clear that a reconventional demand is not considered to be part of an answer even where it has been inserted in the answer. Woodward-Wight & Co. v. Haas, 149 So. 161 (La.App. 1st Cir.1933). Therefore, the time requirements that apply to the filing of an answer are inapplicable to the filing of a reconventional demand.
The code provides that a reconventional demand may be filed after the prescriptive period has run where the reconventional demand had not prescribed at the time of the filing of the main demand "and is filed within ninety days of date of service of main demand." La.Code Civ.P. art. 1067. Assuming that the defendants were able to benefit from the 90 day period provided for in La.Code Civ.P. art. 1067, their reconventional demand was untimely as to the James Group since they did not file it within 90 days of the plaintiffs' supplemental and amending petition. Keller v. Townsley, 462 So.2d 264, 265 (La.App. 1st Cir. 1984).
We find that the claims of the liquidator relate back to the date of the original petition under La.Code Civ.P. art 1153.[6] This court in Keller v. Townsley, 462 So.2d at 265, recognized that:
"main demand", as that term is used in article 1067, encompasses more than just the original petition. LSA C.C.P. art. 1153 provides that amendments to petitions and answers which arise out of the conduct set forth in the original pleading relate back to the date of the filing of the original pleading. It has long been recognized that properly allowed supplemental and/or amending petitions form a part of the plaintiff's demand. Self v. Great Atlantic & Pacific Tea Company, 178 La. 240, 151 So. 193 (1933).
462 So.2d at 265. The motion filed by the liquidator on behalf of the partnership formed part of the plaintiffs' demand. At the latest, the defendants were required to file their reconventional demand against the partnership within 90 days of the liquidator's October 20, 1986 motion. In this case, the defendants failed to file their reconventional demand within a year of the offense or within the ninety-day period provided by the statute. Therefore, those claims listed in the defendants' reconventional demand have prescribed.
When the peremptory exception raising the objection of prescription is sustained, the party whose action is dismissed must be given an opportunity to amend the petition only if grounds for the exception can be removed by amendment. Kerr v. Jefferson Truck Lines, 389 So.2d 729 (La. App. 4th Cir.1980), writ denied, 396 So.2d 1351 (La.1981). The defendants failed to set forth grounds sufficient to overcome *598 the peremptory exception raising the objection of prescription. Due to the defendants' inability to remove the objection of prescription, any error made by the trial judge in failing to allow the defendants to amend their reconventional demand was harmless.

B. JURY INSTRUCTIONS AND INTERROGATORIES
The defendants contend that the trial court erred in (1) refusing to give requested jury instructions and interrogatories, (2) giving incomplete and insufficient instructions regarding the law, and (3) giving instructions that made factual determinations for the jury and instructed the jury erroneously as to the law.
La.Code Civ.P. art. 1793 allows the parties to request that particular jury instructions be given. The trial court is not required to accept the requested instructions verbatim, but the trial judge's own jury charge should be sufficient to reflect adequately the law and issues presented. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984).
The defendants contend that the jury instructions are insufficient in that they did not properly and completely define the scope of fiduciary duty. Although the trial judge instructed the jury with regard to (1) the duty of good faith owed by the partners, (2) prohibitions against prejudicial acts, (3) obligations of fairness, and (4) the necessity of consent and full disclosure, the trial judge neglected to instruct the jury as to the limitation imposed on the amount of damages that may be awarded against a breaching partner. The plaintiffs' recovery is limited to the amount of profits earned by the breaching partner as a result thereof after the breaching partner recoups his original investment in the activity or the partnership contributes its share of the investment.[7] In all fairness, the defendants were entitled to have the jury instructed as to the methods established by law for determining the amount of damages for breach of fiduciary duty. Without the proper instruction on how to compute damages for breach of fiduciary duty, it is impossible for the jury to properly assess damages.
As a result of the settlement among the partners, the plaintiffs do not have a claim for damages after November 26, 1984. The trial judge neglected to mention this fact to the jury. We are unable to determine from the verdict the period for which the jury intended the damages to cover. Therefore, we cannot determine if the jury awarded any portion of the damages for injuries suffered after November 26, 1984. The jury should have been instructed that any damages arising after November 26, 1984, could not form part of the plaintiffs' award.
The trial judge instructed the jury that the partnership was terminated on November 5, 1984, by unanimous consent of all the partners. The defendants contend that this instruction was erroneous because the issue of when the partnership terminated is a question of fact that should have been decided by the jury. Alternatively, they argue that the trial judge erred in reaching an erroneous legal conclusion. The defendants contend that there was at least two-thirds written concurrence at the time the petition for liquidation was filed thereby resulting in extra-judicial dissolution of the partnership as per the partnership agreement. The question to be determined is whether the written notices submitted by the plaintiffs and the defendants were sufficient to establish the two-thirds written concurrence necessary to terminate the partnership. Termination is the "occurrence of factual grounds which compel formal liquidation of the affairs of the partnership." Sharplin v. Talley, 561 So.2d 820, 821 (La.App. 2nd Cir.1990). There is a *599 factual dispute as to whether these signed letters provided the written concurrence necessary to dissolve the partnership under the partnership agreement. Certainly, at the very least, reasonable minds could differ on the date of termination. The trial judge preempted the jury's fact finding role when he unilaterally ruled and instructed the jury that the termination date was November 5, 1984.
The adequacy of jury instruction by a trial court must be determined in the light of jury instructions as a whole. Higgins v. Johnson, 349 So.2d 918 (La.App. 1st Cir.), writ denied, 351 So.2d 161-2 (La.1977). We have fully reviewed the jury instructions in the record which were given by the trial judge, and we agree that the trial judge erred in refusing and/or neglecting to instruct the jury on certain matters.
If the instructions are found to be inadequate or improper, no weight should be accorded to the judgment. Rodriguez v. Traylor, 481 So.2d 1017 (La.1986). When an appellate court has all the facts before it, a trial judge's erroneous instructions to the jury alone do not warrant a remand. Rather, the appellate court must conduct a trial de novo on the matters then before it. In doing so this court is in no way limited by the findings of fact as to damages allotted by the trial court. Gonzales v. Xerox Corporation, 320 So.2d 163, 166 (La.1975).

C. INTRODUCTION OF EVIDENCE
The defendants contend that the trial court erred in refusing to allow them to introduce evidence in support of their affirmative defenses and reconventional demand, in refusing to allow them to prove the comparative fault of the James Group and the liquidator, and in refusing to allow them to present additional relevant testimony.
1. Reconventional Demand and Affirmative Defenses
Following the dismissal by the trial judge of the defendants' reconventional demand, the defendants filed a motion in limine for a pretrial determination of whether they would be permitted to introduce evidence of the reconventional and third party demands and affirmative defenses. The motion in limine regarding the reconventional and third party demand was denied. With regard to the affirmative defenses, the trial judge reserved any ruling on the evidence until it was presented.
Even assuming the reconventional demand claims had prescribed, defendants argue that evidence pertaining to these claims should have been admitted since prescribed claims may be asserted as a defense. La.Code Civ.P. art. 424. Furthermore, if the defendant's reconventional demand is valid, it may be used as a set-off against any judgment obtained by plaintiff after a trial on the merits. Sears, Roebuck and Company v. Reese, 347 So.2d 853, 855 (La.App. 4th Cir.1977).
Defendants alleged that to a significant extent, damages, if any, suffered by the partnership or partners were caused by the liquidator, by delays in the liquidation proceeding, and/or by the individual plaintiffs in their attempt to undermine or delay the liquidation proceedings. These occurrences which occurred after October 15, 1984, go to the question of causation.
The plaintiffs argue that the trial court acted properly in disallowing the defendants to prove the fault of plaintiffs in failing to mitigate damages since the plaintiffs' actions were undertaken with court supervision in the liquidation proceeding.[8] The trial judge stated for the record that he would not allow the defendants to assert, either as a claim or as a defense, any evidence of "damages suffered, because of properly taken legal action" or action "sanctioned by the courts" in the liquidation proceedings unless it could be shown that the liquidator acted outside of his authority. The defendants never questioned the legal authority of the liquidator to undertake such action. However, the defendants do inquire into the commercial soundness of his conduct. Furthermore, the defendants *600 point out that they were prevented from asking any questions that purported to test the limits of the liquidator's authority. All questions aimed at testing such authority were objected to by the trial judge without prompting from opposing counsel.
The court's rulings on the steps to be taken in the operation of the partnership obviously had an effect on the operation and the income of the partnership. Irrespective of whether fault can be attributed to anyone in certain instances, the fact that the court's ruling may have resulted in the reduction in the value of the partnership is crucial to the determination of the amount of damages which may be assessed to any party. These are clear causation questions on which defendants should have been entitled to present evidence.
2. Partnership's Value
The defendants argue that the trial court erred as a matter of law in refusing to allow them to present evidence establishing the value of the partnership, to allow them to introduce evidence of the value of comparable oil distributorship in the area, and to allow them to fully and completely cross examine the plaintiffs' witnesses. Plaintiffs called as a witness Patrick Richard, who was the appointed operator for the partnership in liquidation. Patrick Richard is an owner/operator of a petroleum jobbership in the same geographic area as the partnership. After being qualified as an expert, Mr. Richard gave opinion testimony about facts that affect the value of the partnership. On cross examination, the defendants contend that they were not permitted to cross examine Mr. Richard on how these facts affected the partnership's value.
The court refused to allow the defendants to question Mr. Richard regarding how he evaluates an oil jobbership, about actual offers that he had made on the oil jobbership, and about comparable sales. An expert's prior activities and experience are certainly proper grounds for cross examination so as to enable the jury to evaluate the weight to be given to his testimony. Offers by potential third party purchasers are clearly relevant in determining the fair market value of a partnership. Shopf v. Marina Del Ray Partnership, 549 So.2d 833, 839 (La.1989). The court allowed Randolph Rice to testify about the valuation approach utilized by the plaintiffs' main expert, Drex Martin. Yet, the judge refused to allow the defendants to cross examine Dr. Rice as to Mr. Martin's underlying assumptions with respect to such things as the effect of the absence of a non-compete agreement and the partnership's ability to sell as a going concern. These matters are crucial in evaluating any appraisal; therefore, the defendants should have been allowed to elicit testimony and cross examine the plaintiffs' witnesses as to the assumptions made by the plaintiffs' valuation expert.
All parties should be given the opportunity to cross examine a witness on any relevant matter, especially those issues at the heart of the case. Lone Star Industries, Inc. v. American Chemical, Inc., 461 So.2d 1063, 1069 (La.App. 4th Cir.1984), writ denied, 465 So.2d 738 (La.1985), aff'd on other grounds, 480 So.2d 730 (La.1986), aff'd on rehearing, 491 So.2d 1333 (La. 1986). The trial judge erred in not allowing the defendants to fully cross examine the plaintiffs' experts.
The defendants contend that it was reversible error for the trial court to refuse to allow the defendants to introduce evidence of a comparable sale. Evidence relating to the sale of another jobbership in the same geographic area and its gallonage is directly relevant to the valuation of the partnership. Louisiana courts have continued to hold in expropriation proceedings that evidence pertaining to sales of a comparable thing is the best evidence for use in determining the fair market value of the asset being taken. State, Department of Highways v. Kurtz, 143 So.2d 761 (La.App. 1st Cir.1962).
The trial judge's primary reason for disallowing evidence of the sale of the Truxillo jobbership was that the Truxillo sale occurred subsequent to the sale of Thibaut partnership. "Under the law, you can't use *601 as a comparable something that occurred after." The courts have refused to allow the use of a subsequent sale when dealing with expropriation cases since public knowledge of the expropriation may affect the sale price or market value of the immovable. State, Department of Highways v. Anselmo, 301 So.2d 915, 921 (La.App. 4th Cir.), writ denied, 304 So.2d 671 (La. 1974). Rules applicable to comparables in expropriation differ from the rules applicable to other types of valuation. Shopf v. Marina Del Ray Partnership, 549 So.2d at 839. A similar justification for exclusion does not exist in this case. The Truxillo sale took place on July 14, 1986, some two years after the relevant valuation date of the Thibaut partnership. The length of the time gap between the two sales goes to the weight to be given to the comparable.
Existing evidence as to a comparable is certainly relevant to establish the value of a similar business and is therefore admissible unless it is prejudicial or otherwise inadmissible. The Truxillo comparable had sufficient probative value to warrant its admission. Plaintiffs argue that the Truxillo sale evidence was properly excluded because business sales are unreliable and misleading comparables due to variations in the business assets. This argument properly goes to the weight to be given to the evidence.
The Truxillo jobbership was sold as an on-going concern for $2.5 million. The Truxillo jobbership was a neighbor of the Thibaut jobbership and had double the sales and income of the partnership. The jury was not allowed to hear this evidence; therefore, it was not allowed to use this evidence to determine if the partnership's value as determined by Drex Martin was inflated.
The issue to be decided is whether the exclusion appears to be so prejudicial that its admission would have changed the outcome of the trial. Since the proffered testimony may have changed the outcome of the trial, the jury verdict with respect to damages will not be given effect in our appellate review. McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). Therefore, we are not required to apply the manifestly erroneous or clearly wrong standard of appellate review. Rather, we must give due consideration to all evidence in the record including proffered testimony that should have been admitted. We will make an independent determination of whether the evidence present on the issue of damages preponderates, without affording any deference to the jury verdict. McLean v. Hunter, 495 So.2d at 1304.

II. ERRORS MADE IN RENDERING JUDGMENTS
Did the trial court err in denying the defendants' motion to recuse the trial judge, in finding the defendants solidarily liable in the original judgment on the merits, and in amending the original judgment after an appeal had been taken?

A. RECUSAL
Did the trial judge err in denying the defendants' motion to recuse Judge Goldsmith?
On April 13, 1987, the Thomas Group filed a motion for recusal of the trial judge on the grounds that the trial judge (1) was a material witness with respect to certain reconventional demands asserted against the plaintiffs and the third-party demand asserted against David D. Thibaut, (2) was biased in favor of counsel for plaintiffs, and (3) may be called as a material witness with respect to the reconventional and third party demands for wrongful issuance of a temporary restraining order. Judge Goldsmith denied this motion on October 19, 1987. However, this court ordered that the defendants' motion to recuse be transferred to Judge John L. Peytavin's division for a hearing pursuant to the defendants' application for supervisory writs. Thibaut v. Thibaut, CW 87 1632 (La.App. 1st Cir. December 2, 1987). On November 23, 1988, Judge Peytavin denied the motion for recusal.
In light of the various errors made by the trial judge, as discussed in Part I, this court is entitled to exercise its constitutional authority to conduct a trial de novo in this case. The entire record, including *602 all proffered testimony, is before us. In conducting a trial de novo, we are required to make an independent evaluation of all evidence introduced at trial. In the event that we determine the trial court erred in ruling on the admissibility of evidence, we are entitled to review the related proffered testimony. Thus, any unjust rulings made by the trial judge as a result of alleged biases or prejudices will be rectified during our independent evaluation of the merits of this case. Therefore, any error which may have been made by Judge Peytavin in denying the defendants' motion to recuse Judge Goldsmith was harmless.

B. IN SOLIDO LIABILITY
The defendants argue that the trial court's judgment providing for in solido liability is unsupported by the law and the facts.
The jury was not properly instructed as to the imposition of in solido liability for breach of contract by multiple obligors and for violation of La.Civil Code art. 2324. Whether the defendants acted in concert, assisted or encouraged another to commit an "unlawful act," as established in La.Civil Code art. 2324, is a question of fact which should have been submitted to the jury. The jury did not make a factual finding that any of the individual defendants caused another person to do an unlawful act or assisted or encouraged another in the commission of an unlawful act. The jury simply made findings of individual percentages of fault.
The defendants cannot be held solidarily liable without a factual finding upon which solidarity liability can be based. Therefore, the trial judge erred in holding the defendants solidarily liable.

C. ISSUANCE OF A SECOND JUDGMENT AFTER SUSPENSIVE APPEAL HAS BEEN TAKEN
The trial judge erred in issuing a second judgment at variance with the jury's verdict after he no longer had jurisdiction over the case.
The defendants filed a motion for suspensive appeal of the August 21, 1989 judgment which was granted by the trial court on October 6, 1989. On October 10, 1989, they filed a suspensive appeal bond. On October 20, 1989, the trial judge rendered an amended judgment setting forth percentages for contribution and indemnification between the defendants.
Pursuant to La.Code Civ.P. art. 2088, the trial court was divested of jurisdiction over the merits of this case once the order of appeal was granted and the suspensive appeal bond was filed. La.Code Civ.P. art. 1951 provides for two instances in which the trial court retains authority to amend a final judgmentto alter the phraseology or to correct errors of calculation. The rendition of this amended judgment is not authorized by La.Code Civ.P. art. 1951 or the limited trial court actions permitted after appeal under La.Code Civ.P. art. 2088.
The general rule is that a final judgment is not subject to substantive amendment by a trial judge on his motion or on the motion of any party. Villaume v. Villaume, 363 So.2d 448, 450-451 (La. 1978). Indeed, the proper recourse for an amendment that directly affects the rights of the parties is a timely application for a new trial or a timely appeal.
A modified judgment issued after an appeal is null and without effect because the appeal divested the trial court of jurisdiction. State, Louisiana Division of Health and Human Resources Administration v. Simmons, 521 So.2d 749, 753 (La.App. 2nd Cir.1988). The October 20, 1989 judgment is null and void since the trial court was without jurisdiction to render an amended judgment.

III. BASIS FOR THE AWARD OF DAMAGES
Inasmuch as we have found trial court error, as discussed in Parts I and II of this opinion, sufficient enough to set aside and reverse the judgment of the trial court, we now proceed to resolve and decide this matter. Rather than remand for a new trial pursuant to the authority of Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980), we decide because *603 there is sufficient evidence before us to render a decision and to proceed therewith. See Landry v. Doe, 582 So.2d 242 (La.App. 1st Cir.), writ granted, 586 So.2d 543 (La. 1991); and Willis v. Letulle, 581 So.2d 1048 (La.App. 1st Cir.), writ granted, 583 So.2d 484 and 485 (La.1991).
The following evidence was adduced at trial in regard to the issue of alleged breach of fiduciary duty and violation of the Unfair Trade and Consumer Protection Law:
(1) Thibaut Oil Company, Inc. (the corporation) was incorporated on February 20, 1984.
(2) The corporation began organizing for business in late August or early September of 1984 by acquiring a location and equipment, and asking Shell Oil Company for a jobber contract.
(3) On September 27, 1984, the Thomas Group arranged for the partnership to sell a 30,000 gallon capacity propane tank to Churchill and Thibaut, Inc. which was in turned leased to the new corporation.
(4) On October 15, 1984, the corporation began actual operations by sending a letter to the partnership's customers (using the partnership customer list) informing them the partnership was terminated effective October 15, 1984, and a new entity, Thibaut Oil Company, Inc. had been formed, was in operation, and was soliciting their patronage.
(5) On or after October 15, 1984, the corporation hired the partnership's employees.
(6) Effective October 16, 1984, the corporation entered into a jobber contract with Shell Oil Company.
(7) From October 15, 1984 until October 22, 1984, the corporation operated from the Thibaut Building. The Thibaut Building houses the offices of several Thibaut family businesses including the partnership. One telephone line served all of these businesses. The corporation answered customer calls to the partnership and filled those orders. Orders filled with partnership assets were credited to the partnership.
(8) From October 15, 1984 until February 20, 1985, the corporation delivered gas into some underground tanks belonging to the partnership.

A. BREACH OF FIDUCIARY DUTY
In their original petition, plaintiffs allege that the defendant partners violated fiduciary duties owed to the partnership and to their copartners. The plaintiffs argued that the following actions by the defendants resulted in a breach of fiduciary duty recognized by La.Civil Code art. 2809: (1) acting secretly and without the consent of their copartners to establish a business capable of taking over the operations of the partnership; (2) abandoning the management of the partnership, dismissing its employees, distributing its liquid assets, and taking other measures all designed to prevent its continued operation and having that effect; (3) contacting the former customers of the partnership and otherwise continuing the business activities of the partnership in the name of the corporation; and (4) converting to their own use the name, assets, such as the underground tanks, and goodwill of the partnership to the exclusion of plaintiffs. The plaintiffs argue that these actions combined destroyed the value of the partnership as a going concern.
Partners have a duty to deal fairly and honestly with each other. Each partner must refrain from taking any advantage of other partners by the slightest misrepresentation or concealment of material facts. Full and complete disclosure of all important information is required despite the fact that the relations between the partners have become strained or in conflict. W.A. McMichael Construction Company v. D & W Properties, Inc., 356 So.2d 1115, 1122 (La.App. 2nd Cir.), writ denied, 359 So.2d 198 (La.1978).
It is clear that a fiduciary relationship existed between the partners and the partnership at all times prior to the alleged *604 termination on October 15, 1984[9] and continued until final liquidation. La.Civ.Code art. 2809, comment (b). Throughout the existence of such relationship, the defendant partners had a fiduciary duty to disclose to the plaintiff partners all material facts within their knowledge. We do not believe that such fiduciary relationship was observed by the defendant partners based on their individual efforts to divert the partnership's business to their "shelf" corporation while they were still partners of the existing partnership. We find that the defendant partners' actions constituted a breach of fiduciary duty.

B. EVIDENCE OF DAMAGE TO INDIVIDUAL PARTNERS
The level of damages was established by the testimony given by experts which pertained to the determination of the partnership's value. All the evidence presented by the plaintiffs related to alleged loss suffered by the partnership. As owners of the injured partnership, the plaintiff partners have sustained damages to the extent that the value of their ownership interest in the partnership has been diminished. The only means the plaintiff partners had to prove their injury was by proving the extent to which the partnership was injured. Both suffered from the same injury and sustained the same damages. The plaintiffs have set forth sufficient evidence to preponderate their claim that the plaintiff partners, individually, suffered damages.

C. LIABILITY OF JANE THIBAUT BOYCE AND EUGENIA SMITH MUELLER
Jane Thibaut Boyce and Eugenia Smith Mueller contend the plaintiffs failed to submit any evidence that they caused damages as a result of a violation of unfair trade practices or breach of fiduciary duty. They contend that the simple fact that they agreed to the termination and liquidation of the partnership and that they provided start-up capital for the new corporation is alone insufficient to prove that they took any action individually that caused any damages to the partnership or the plaintiff partners. Jane Thibaut Boyce and Eugenia Smith Mueller contend that they should be treated differently than those defendants who were actively participating in the affairs of the corporation.
The fact that Jane Thibaut Boyce and Eugenia Smith Mueller may have been passive investors in this case should not allow them to escape liability for breach of fiduciary duty. Ms. Boyce and Ms. Mueller were aware of everything that was going on with the formation of the corporation. They concurred in the planning of the formation of the new distributorship which was to become operational on the date the petition for liquidation was filed. Money was contributed by Ms. Boyce and Ms. Mueller prior to the partnership's termination to support the defendants' cause, i.e. to purchase equipment to be used in the corporation. Ms. Boyce and Ms. Mueller participated in the defendants' plan to terminate the partnership and transfer the partnership's business to their newly formed corporation; therefore, they are liable in damages for breach of fiduciary duty.

IV. DAMAGES
The formula for determining damages under La.Civil Code art. 2809 contemplates that the damages sustained by the partnership and/or plaintiff partners are measured in terms of the profits derived by the defendants partners as a result of the breach. The amount arrived at when computing profits should be reduced by the amount of breaching partners' "original investment in the activity." La.Civil Code art. 2809, comment *605 (c). In this case, the actions and maneuvers undertaken by the defendants in their plans to take over the business of the partnership in their own names to the exclusion of the plaintiff partners caused the demise of the partnership. The defendants essentially obtained an already established, reputable, business enterprise while incurring costs simply to purchase the necessary equipment. We find that the breaching partners gained the value of the existing partnership. In determining damages pursuant to La.Civil Code art. 2809, we must reduce this gain figure by that amount paid by the breaching partners at the liquidation sale. Any value received by the breaching partners in excess of the purchase price paid represents damages. Stated another way, the damages sustained by the plaintiffs equal the value of the existing partnership that the defendant partners obtained at no charge.
Evidence indicates that the defendants purchased most of the partnership's assets at the liquidation sale for approximately $1,724,823. Actions undertaken by the defendants prior to this purchase enabled the defendants to become the sole owners of a business that was originally 50% owned by the plaintiff partners. To determine the gain derived by the breaching partners and the actual loss suffered by the partnership and/or plaintiff partners, we must first determine the value of the partnership immediately prior to the filing of the petition for liquidation by the defendants. Thereafter, we must reduce this value by the price previously paid by the defendants, or $1,724,823.
Considerable expert testimony was adduced on the valuation issue. Drex Martin, plaintiffs' expert, testified that the value of the partnership was $5,081,000 based on results obtained by applying the discount earnings approach as the appropriate method for valuing a business. Dr. Rice testified that various other acceptable valuation methods exist. Expert testimony with respect to the application of different valuation approaches produced values ranging from $1,800,000 to $2,225,000. Evidence on a comparable recent sale was also proffered. Mr. Martin's basic approach was to determine an annual "normalized" income figure, project it fifteen years, and discount it back at an acceptable rate. Mr. Martin selected the years 1980-1983 as being a "representative" income stream for the company. He then averaged the income of the company and calculated the annual income to be $497,000. This figure was increased to $550,000 for the purposes of his calculations based on speculation that an improvement in management would produce greater income. He thereafter assumed that the income would grow at a rate of five percent per year. He projected out a future income stream for 15 years and then discounted at a rate of 14 percent. These calculations produced an estimated present value of $4,330,000. Mr. Martin then added $750,000 of extraneous cash[10] to this amount to arrive at an estimated value of $5,081,000.
Mr. Martin admitted in his testimony that his estimate failed to consider many important factors. Uncollectible accounts receivables, finance charges on uncollectible receivables, and money received as restitution for a theft were all included in income amounts used by Mr. Martin. Richard Kelly, defendants' valuation expert, testified that these amounts should not have been included in income. Mr. Kelly testified that corresponding adjustments should be made to Mr. Martin's starting income figure to accurately reflect income generated by the business.
In a comparable calculation, Mr. Kelly estimated the value of the partnership at December 31, 1983, to be $3,156,000. Mr. Kelly based his calculations on the same figures used by Mr. Martin with two exceptionsMr. Martin's starting annual income figure was adjusted down to $444,095 to properly reflect the factors referred to above and a three percent growth rate was applied rather than Mr. Martin's five percent rate. Mr. Kelly reasoned that the *606 recent decline in the gallons of petroleum sold acted as a good indicator that the company was unlikely to experience any growth. So he simply provided for a three percent annual increase to reflect inflation. Mr. Kelly's calculations revealed that the value of the partnership at the end of 1983 was $3,156,000.
After reviewing the evidence presented as to the possible value of the partnership, we find that the value as established by Mr. Martin is excessive. When considering all of the valuation evidence as a whole, we find that the value, $3,156,000, as determined by Mr. Kelly in his comparable discount earnings calculation more accurately reflects the true value of the partnership on December 31, 1983. Mr. Martin suggests that the $750,000 of extraneous cash be added to this figure to arrive at the partnership's value. Since the extraneous cash was not among the assets purchased by the defendants at the liquidation sale, we decline to include this figure in calculating the value received by the defendant partners. The estimated income figure is then reduced by 10% or $315,600 to reflect the defendants' unwillingness to sign a non-compete clause. In essence, the defendant partners obtained an existing business with a value of $2,840,400 for the purchase price of $1,724,823. Therefore, the actual damage sustained by the partnership is $1,115,577.
We need be mindful of the facts in this case. Once the partnership was terminated and liquidation proceedings were under way, the partnership continued in existence solely for purposes of the liquidation. The damages sustained in this case were suffered by the partnership at the moment the defendant partners initiated their secret plan to take over the business of the partnership. However, the individual partners to the extent of their ownership interest in the partnership have also suffered damages. While La.Civil Code art. 2809 entitles both the partnership and the partners to recover for breach of fiduciary duty, it does not allow double recovery for the same injury. In the interest of justice, we find that the damages awarded for breach of fiduciary duty should be paid directly to the plaintiff partners in proportion to their ownership interest rather than to the discontinued partnership. The plaintiff partners are 50% owners in the partnership; therefore, they are entitled to one-half of the damages sustained by the partnership, or $557,788.50.
Former La.Civil Code art. 2324 provided for in solido liability only where there had been a finding that the parties conspired to do an "unlawful act." The defendant partners exhibited a clear intent to decimate the partnership's business for their own gain. The plaintiffs' claim for breach of fiduciary duty lies in contract rather than tort and would not support a finding of solidarity under former La.Civil Code art. 2324. Henley v. Haynes, 376 So.2d 1030, 1031 (La.App. 1st Cir.), writ denied, 377 So.2d 843 (La.1979); Roussel Pump & Electric Co. Inc. v. Sanderson, 216 So.2d 650, 655 (La.App. 4th Cir.1968). La.Civil Code art. 2809 provides a basis for determining the amount of damages. However, this article does not address the nature of the liability imposed where a breach occurs by multiple partners. La.Civil Code art. 2802 directs us to the Title: Of Conventional Obligations.
Solidary is not presumed; it must be established by the parties or by law. La.Civil Code art. 1796. Each defendant partner, separately, owed a fiduciary duty to the partnership and each of his copartners. Therefore, the obligations recognized in La.Civil Code art. 2809 were several. La.Civil Code art. 1787. There was no solidary obligation for the performance of the separate obligations. Town of Winnsboro v. Barnard & Burk, Inc., 294 So.2d 867, 885 (La.App. 2nd Cir.), writ denied, 295 So.2d 445 (La.1974).
It does not necessarily follow, however, that the obligations now owed by the defendants remain several. The obligation which plaintiff seeks to enforce... is the obligation of each defendant to respond in damages arising out of a breach of their separate contracts. The defendants' respective breaches of their contracts combined and contributed to *607 cause the same item of damages sustained by the plaintiff. At this point, the defendants are all obliged to the same thing, each may be compelled for the whole, and payment by one would exonerate the other toward the creditor.
294 So.2d at 885. The obligation at issue in this suit is the payment of damages by the defendant partners for the damages that were suffered by the partnership and/or their copartners as a result of their respective breaches of fiduciary duty. Standard Roofing Company of New Orleans v. Elliot Construction Company, Inc., 535 So.2d 870, 882 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1166 (La.1989). The defendant partners' actions combined and contributed to cause the same item of damages; therefore, they are now obligated to reimburse the partnership and/or the plaintiff partners for the losses sustained as a result of their combined actions. We find the defendant partners liable in solido.

V. UNFAIR TRADE AND CONSUMER PROTECTION LAW

A. UTACPL ACTION BY PLAINTIFF PARTNERS
The defendants argue that the plaintiff partners should not be allowed to recover damages under the UTACPL since the UTACPL does not provide a remedy to the individual partners. Furthermore, the defendants contend that the individual partners may not bring an action on behalf of the partnership for unfair trade practices allegedly committed against the partnership.
La.R.S. 51:1405 declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. La. R.S. 51:1409 provides that "any person who suffers any ascertainable loss of money or movable property, corporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405" has a cause of action under the UTACPL for damages. Although the language in the statute appears to afford a right to any person damaged by unfair trade practices committed by another, Gil v. Metal Service Corporation, 412 So.2d 706, 707 (La.App. 4th Cir.), writ denied, 414 So.2d 379 (La. 1982), held that recovery under La.R.S. 51:1405 is limited to consumer and business competitors. In Gil v. Metal Service Corporation, the Fourth Circuit Court of Appeal upheld the trial court's decision that the employee had no cause of action under the UTACPL since he was not member of a protected classneither a consumer nor business competitor.
The plaintiff partners are clearly not consumers of the products sold by the new entity. They have never individually sold oil or gas or related products. The plaintiff partners failed to prove that they were business competitors of the new business formed by the Thomas Group. Since the individual plaintiffs were neither competitors nor consumers, they are not members of a protected class under La.R.S. 51:1405. Therefore, the UTACPL does not provide the individual plaintiffs with a cause of action. Additionally, R.S. 51:1409 expressly prohibits an individual from bringing an action in a representative capacity. Thus the individual partners may not bring an action on behalf of the partnership.
Since it is clear that the individual plaintiffs are not consumers or business competitors and since the act prohibits suit in a representative capacity, the plaintiffs, both as individual partners and on behalf of the partnership, had no cause of action and no right of action under the UTACPL. The trial court improperly denied the defendant's peremptory exception raising the objections of no cause of action and no right of action with respect to the plaintiff partners' UTACPL claim.

B. UTACPL VIOLATION
The defendants contend that La.R.S. 51:1405 does not go so far as to guarantee those classes protected under the UTACPL against competition. The plaintiff partnership alleges the defendants' actions referred to above also amounted to a violation of the Unfair Trade and Consumer Protection Law. The defendants contend that their acts are clearly fair competitive acts consistent with the free enterprise system. *608 The defendants' argument that La. R.S. 51:1405 does not afford a guarantee against competition is correct. However, in addition to protecting an individual's right to compete, the UTACPL is designed to protect a business's right of fair play.
What constitutes unfair competition is a matter to be decided in each individual case. Damages will be awarded under the UTACPL only when the plaintiff proves some element of fraud, misrepresentation, deception, or other unethical conduct on the part of the defendants. The key consideration is business honesty. National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269, 1273-74 (La.App. 4th Cir.1980).
The defendants secretly conceived, planned, and carried out their scheme to close down the partnership and to transfer the business, employees, and customers of the partnership into their "shelf" corporation. The plaintiff partnership has proven these facts of business deception by a preponderance of the evidence. Therefore, it is entitled to damages under the UTACPL. See Dufau v. Creole Engineering, Inc., 465 So.2d 752, 758 (La.App. 5th Cir.), writ denied, 468 So.2d 1207 (La.1985).

C. PEREMPTION OF UTACPL CLAIM
Was the plaintiff partnership's claim against the defendants under the UTACPL perempted thus barring any claim for damages for unfair competition?
The James Group filed a petition for declaratory judgment on December 7, 1984. The original petition named the liquidator of the partnership as an indispensable party defendant. On October 15, 1985, the James Group filed a supplemental and amended petition for damages resulting from the alleged wrongful conduct. In this supplemental and amending petition, the liquidator for the partnership was joined "as a party under La.C.C.P. 641, 642, and 644, so that it may assert the claim of the partnership against the defendants in this proceeding."
If a party who should be joined under La.Code Civ.P. arts. 642 and 643 fails to join the lawsuit, "he may be joined as a defendant and required to assert his rights in the action or be precluded thereafter from asserting them." La.Code Civ.P. art. 644. In the present case, the partnership was originally named as a defendant thereby meeting the requirement of La.Code Civ.P. art. 644. As a named defendant, the partnership could assert the rights it held against the remaining defendants. However, on October 20, 1986, the liquidator acting on behalf of the partnership sought to be joined as a plaintiff by way of a motion and order. In light of the length of time that passed between the filing of the original petition and the liquidator's motion and order, the defendants contend that the liquidator was not joined until after the partnership's claim for damages had perempted.
A private action brought pursuant to La.R.S. 51:1409 "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La.R.S. 51:1409(E). The one year period outlined in La.R.S. 51:1409 is preemptive in nature and is not subject to interruption or suspension. Canal Marine Supply, Inc. v. Outboard Marine Corporation of Waukegan, Illinois, 522 So.2d 1201, 1203 (La.App. 4th Cir.1988). Therefore, we find that the filing of the original and supplemental petitions by the individual partners did not interrupt the tolling of the one-year preemptive period as to the partnership.
However, the issue of whether the filing of liquidator's motion to be joined as a party plaintiff after peremption had run relates back to the date of the timely filed original petition must be addressed by this court. Although the courts have held in earlier decisions that the relation back provision of La.Code Civ.P. art. 1153 does not apply to peremption, this court in Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060, 1063 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La.1990), held that a cause of action under La.R.S. 51:1409 could be maintained under a relation back theory. In Spencer-Wallington v. Service Merchandise, this court utilized *609 the criteria set forth by the supreme court in Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040 (La.1985), to determine if the plaintiffs UTACPL claim had been timely filed.
The amendment may relate back if: the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original petition; the defendant either knew or should have known of the existence and involvement of the new plaintiff; and, the new and old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated, and the defendant will not be prejudiced in preparing the conducting his defense.
Spencer-Wallington v. Service Merchandise, 562 So.2d at 1063.
In their original petition for declaratory judgment, the plaintiffs alleged that the named defendants acted in competition with the partnership, and used a deceptively similar name. Even though the plaintiffs' original petition did not assert a claim for damages, it contained sufficient factual allegation that would support an amendment asserting such a claim. Such facts if proved might entitle the plaintiffs and/or the partnership to damages for unfair competition and interference with the business of the partnership.
The partnership is not a wholly new and unrelated party. The allegations contained in the James Group's original petition were sufficient to provide notice to the Thomas Group that the partnership might seek damages for unfair trade practices. The defendants failed to show that they were prejudiced by the October 20, 1986 joinder of the partnership as a party plaintiff in preparing and conducting their defense. The defendants had ample time to prepare for trial. Therefore, we conclude that the liquidator's October 20, 1986 motion and order related back to the date of original petition. The plaintiffs' UTACPL claim had not perempted.

D. DAMAGES
Under La.R.S. 51:1409(A), the partnership is entitled to recover actual damages. The formula for determining damages under La.Civil Code art. 2809, as discussed in part IV of this opinion, contemplates that the actual damages sustained by the partnership is measured in terms of the profits that were derived by the defendants as a result of the breach. La.Civil Code art. 2810 specifically states that the language in La.Civil Code art. 2809 should in no way limit the plaintiffs recovery for other wrongful acts, i.e. for violation of the UTACPL. However, La.Civil Code art. 2810 does not authorize double recovery. Though we find that the defendants violated the UTACPL thereby entitling the partnership to damages under La.R.S. 51:1409(A), we are prevented from awarding damages in excess of those actually suffered by the partnership. Under either theory of liability, the most that the defendants can be made to pay is the value of the existing partnership that the defendants obtained at no charge.

E. ATTORNEYS' FEES
The defendants' basic argument with respect to the award of attorneys' fees is that it is improper since the plaintiff partners are not entitled to recovery under the UTACPL. Alternatively, they argue that the trial court no longer had jurisdiction to assess that amount of attorneys' fees once the appeal from the August 21, 1989 judgment and the suspensive appeal bond was posted or that the award was excessive.
The August 21, 1989 judgment on the merits specifically awarded attorneys' fees and all cost to the plaintiffs and directed that such fees be fixed by rule to show cause. The rendition of the judgment in this manner did not divest the district court of jurisdiction to determine, after a hearing, the amount to be awarded as attorneys' fees. La.Code Civil P. art. 2088 simply divests the trial court of jurisdiction over matters that are reviewable on appeal. The issue of the amount of attorneys' fees to be awarded to the plaintiffs was not the subject of the August 21, 1989 judgment; therefore, it is not reviewable by this court in appeal CA 90 0904. The trial court *610 properly allowed a rule to show cause on this issue.
The trial court awarded $163,333.33 of the $183,333.33 award to the individual plaintiffs. The partnership was only awarded $20,000 in attorney's fees. La. R.S. 51:1409(A) provides the sole basis for the award of attorney fees in this case. Since the individual partners do not have a right of action under the Unfair Trade and Consumer Protection Law, the individual plaintiff partners have no basis upon which to base their claim for attorneys' fees. Therefore, the trial judge erred in awarding $163,333.33 in attorneys' fees to the individual partners. Furthermore, only those defendants who are liable in damages for violation of the Unfair Trade and Consumer Protection Law are liable for attorneys' fees.
John E. Thibaut and the defendant corporation argue the partnership sold all rights it had against them during the liquidation sale. On October 8, 1985, the liquidator sold "[a]ll assets of the partnership arising prior to the judgment of liquidation," and certain other enumerated assets. The terms of the liquidation sale simply made an exception for claims against partners arising prior to the judgment of liquidation. No exception was made to retain the claims which the partnership may have had against nonpartners. Therefore, the partnership no longer had a right of action against John E. Thibaut and the defendant corporation. The remaining defendants are entitled to benefit in the amount of the portion of attorneys' fees due by these two defendants. La.Civil Code art. 1803.
The remaining issue to be decided by this court is whether the $20,000 award of attorneys' fees to the liquidator on behalf of the partnership is excessive. The defendants contend that the $20,000 award is excessive especially considering the fact that only $11,971.69 in legal fees were charged to the partnership by its attorney, Mr. Percy. In fact, Mr. Percy conceded at oral arguments that the defendants' contention is correct and that the trial court erred in allowing recovery in excess of $11,971.69. The trial court clearly erred in awarding attorneys' fees to the partnership in excess of what was actually paid by it for such services. Since $11,971.69 is reasonable in light of the services rendered by Mr. Percy, we find that the most the trial court could have awarded to the liquidator of the partnership in attorneys' fees is $11,971.69.
In the November 2, 1990 judgment awarding attorneys' fees, the trial judge awarded legal interest on the attorneys' fees from the date of judicial demand. The amount of attorneys' fees due to the plaintiffs were not ascertainable prior to the November 2, 1990 judgment. Therefore, interest on the award of attorneys' fees begins to run from the date of such award and not from the date of judicial demand. Alexander v. Burroughs Corporation, 359 So.2d 607, 613-614 (La.1978). The trial court erred in allowing the plaintiffs recovery of interest on awarded attorneys' fees from the date of judicial demand.

VI. EXPERT WITNESS FEES
The defendants seek to decrease the expert witness fees awarded. The trial judge awarded $15,000[11] for expert witness fees. Mr. Martin charged the plaintiffs $14,195.57 and Dr. Rice charged the plaintiffs $3,650.
The defendants contend that the $15,000 amount for expert witness fees awarded by the trial court is excessive in light of the time spent testifying in court. La.R.S. 13:3666 vests discretion in the trial court in fixing the amount of expert witness fees which will not be disturbed absent an abuse of discretion. Missouri Pacific Railroad Company v. Nicholson, 460 So.2d 615, 629 (La.App. 1st Cir.1984), writ denied, 462 So.2d 185-6 (La.1985). It is apparent that the experts in this case spent a considerable amount of time in preparation for trial and giving their testimony in court with respect to the valuation of the partnership. *611 We are not convinced that the trial court abused its much discretion in setting the expert witness fees of plaintiffs' experts.

DECREE
Therefore, for the above and foregoing reasons the judgment of the trial court is reversed and IT IS NOW ORDERED, ADJUDGED, and DECREED that there be judgment in favor of the plaintiff partners according to their partnership interest for $557,788.50, with interest from date of judicial demand, and in favor of the partnership for attorneys' fees in the amount of $11,971.69, subject to benefits recognized in La.Civil Code art. 1803, with legal interest from the date of judgment setting attorneys' fees, against the defendant partners, in solido. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are to be shared equally by appellants and appellees.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
GONZALES, J., concurs and assigns reasons.
GONZALES, Judge, concurring.
In the reversal of this case, two judges of this Court have indicated a serious disagreement with the trial court's findings. I, too, disagree with the findings of the trial court, and I totally concur in the reversal. However, I do not agree entirely with the rendition by the majority and I would go further and remand this case for a new trial for the following reasons.
The defendants filed a motion to recuse the trial judge which was denied. The defendants then had to prevail on a writ application to this court to have the recusal issue presented to another judge. On remand, the motion to recuse was denied by another judge. No writs were taken from the denial of this motion. However, it is a final judgment which is reviewable on appeal and is encompassed within assignment of error number 16 as noted by the majority. Considering the long string of prejudicial rulings against the defendants, at what point does a litigant say "I told you so?" On most of the issues the defendants complained about, the majority found the judge committed reversible error.
The majority opinion made the following reversals of the trial court's rulings:
1. The trial judge preempted the jury's fact finding role when he unilaterally ruled and instructed the jury that the termination date of the partnership was November 5, 1984.
2. The judge refused and/or neglected to instruct the jury on certain matters.
3. The judge did not allow the defendants to present evidence as to their reconventional demands, which even if prescribed, may be asserted as a defense.
4. The judge refused to allow the defendants to fully cross-examine plaintiff's experts in regard to their methods of evaluating the partnership.
5. The judge refused to allow the defendants to present evidence of a comparable sale.
6. The judge erred in holding defendants solidarily liable without a factual finding upon which solidary liability can be based (although the finding of solidarity was not reversed).
7. The judge erred in issuing a second judgment at variance with the jury's judgment after he no longer had jurisdiction in the case.
8. The damages awarded to the individual parties under UTACPL were reversed.
9. The award of attorney's fees of $163,333.333 to individual partners was reversed.
10. The award made to the partnership against John E. Thibaut and the defendant corporation was reversed because they were nonpartners and were thus released under the terms of the liquidation sale.
11. The award of attorney's fees of $20,000 to the liquidator was found excessive and was reduced to $11,791.69.
12. The award of interest on attorney's fees given from date of judicial demand was changed to run from date of judgment.
*612 First, these significant trial court errors indicate an overall denial of due process to the defendants. Due to the substantial errors in the trial court's rulings, I believe the only equitable and fair way to determine the true facts would be to remand this case and have it tried anew before a disinterested and impartial magistrate.
Second, this case should be remanded because the record is incomplete and inadequate. Based upon the record, this Court cannot make a proper rendition of the facts in this case. The reason we have an incomplete and improper record is that the trial court precluded the presentation of affirmative defenses, and even more significantly, the trial court's rulings prevented the development of significant cross-examination. I do not believe that a proffer could cure the defects in the development of evidence that could have and should have occurred had the proper cross-examination been allowed. Louisiana Code of Evidence article 611(B) provides that "A witness may be cross-examined on any matter relevant to any issue in the case...." There is no way a proponent of evidence can effectively proffer the evidence which he might have succeeded in developing by concessions garnered through effective cross-examination. This is particularly true with regard to the attempt to cross-examine the plaintiffs' experts. Had the defendants been able to make proper cross-examination, a significantly different set of facts might have developed with regard to the issues presented by the expert testimony. The majority opinion to some extent mollifies and cures this problem by virtually adopting the testimony of the defendants' experts on the question of damages. However, as will be discussed later, I believe the wrong measure of damages was used even by the defense witnesses, and as a matter of law there is insufficient evidence in the record on which this Court can render a judgment on the question of damages.
The majority opinion correctly recognizes that the measure of damages in a breach of fiduciary obligation case is the gain occasioned by the breaching partners, after deducting the amount of their investment into that activity. The error made by the trial court and by the majority opinion in determining damages is the assumption that the gain to defendants from their breaching conduct was the value of the new corporation. There is no testimony in the record from any expert outlining the value of the new corporation. There is no evidence showing its net worth, its gross or net profits or any factors by which one could conclude that the value of the corporation owned by the defendants is somehow equal to the value of the partnership owned by all parties. This was an assumption the majority opinion was forced to make due to a lack of evidence on this point. The absence of that evidence is critical and a basis cannot be supplied by this Court where the plaintiffs have totally failed to show a nexus between the value of the corporation (the gain by the breaching conduct) and the value of the old partnership.

FINDING OF VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
I also disagree with the finding by the majority opinion that there was a violation of the Unfair Trade Practices and Consumer Protection Law against the old partnership. The majority opinion correctly finds that the individual plaintiff partners were not consumers or competitors of the new corporation and thus do not fall within the category of persons who can make the claim for a violation of the UTACPL. However, it is equally true that the old partnership was not a competitor or consumer of the new corporation. The evidence failed to show that the partnership was a competitor of the new corporation. Paragraph 10 of the plaintiffs' amended petition states:
Without advance warning to plaintiffs, Thomas A. Thibaut and Michael Smith, III, abandoned their respective duties as managing partner and employee of Thibaut Oil Company on October 15, 1984, the partnership's employees were dismissed, its trucks were parked and its offices were shut down with no provision *613 whatsoever made for the partnership to service its customers, answer their inquiries or continue any of its operations.
This constitutes a judicial admission by the plaintiffs that the partnership was not in business and thus, it could not possibly have been a competitor at the time the defendant corporation began its operation. Further, the majority opinion finds on page 606 as follows, "... the partnership continued in existence solely for purposes of the liquidation." A partnership in existence solely for the purpose of liquidation is only in the business of selling its assets and collecting any outstanding debts. It is not an operating company and therefore could not be a competitor with the new corporation. For this reason I believe that an award of damages for unfair trade practices must fall. Since the only claim for attorney's fees in this case is based on the finding of a violation of the Unfair Trade Practices And Consumer Protection Law, and since I believe no such violation occurred, I also disagree with any award for attorney's fees. Additionally the majority seems to find on page 607 that "... the plaintiffs, both as individual partners and on behalf of the partnership, had no cause of action and no right of action under the UTACPL." Yet, on page 609 the opinion says "Under La.R.S. 51:1409(A), the partnership is entitled to recover actual damages." A simple reading of the Act makes it clear "Any person ... may bring an action individually but not in a representative capacity to recover actual damages." Because no suit can be brought under UTACPL in a representative capacity, I believe the UTACPL claim and its attendant attorney's fees must fall.

LIABILITY OF EUGENIA SMITH MUELLER AND JANE THIBAUT BOYCE
As to the liability of Eugenia Smith Mueller and Jane Thibaut Boyce, there is nothing in the record to show that either of these defendants actively participated in any breach of the fiduciary obligation to the plaintiff partners. They were totally passive investors who took no active part in the decisions of the new corporation. Their sole involvement in the case was to provide start-up capital for the new corporation. It should be borne in mind that these two individuals had been involved in this business for quite some time, and that under our free enterprise system, they were perfectly free to begin a new business if they chose to do so. Although the fiduciary duty existing between partners is extremely important, it should not be so broadly construed as to prevent a person from continuing to earn their livelihood in a business of his choice simply by investing money. Under the interpretation of fiduciary obligation made by the majority, a person involved in a partnership who disengages himself from that partnership and invests in any competing activity would be in violation of his fiduciary obligation to his previous partners. Such a broad interpretation could have a stifling effect on our free enterprise system.
A review of the record shows that the testimony of Jane Thibaut Boyce is brief, and that it does not contain any evidence that she actively or knowingly participated in any acts which were intended to harm the existing partnership. In this case, when the relationship between the partners became strained, both plaintiff partners and defendant partners formed "shelf" corporations and both plaintiff partners and defendant partners had plans to continue in business. Basically, the involvement of Mrs. Boyce and Mrs. Mueller was to simply provide capital to invest in the new corporation. Mrs. Mueller did not testify and there is no evidence that she did anything other than provide this capital. It should be kept in mind that the capital invested by Mrs. Mueller and Mrs. Boyce was for the most part the proceeds of their interest in the former partnership.

MEASURE OF DAMAGES USED BY THE MAJORITY
As previously noted, I believe the majority rendition used the wrong measure of damages by having to make assumptions which are not founded on facts in the record. In addition, I believe the jurisprudence in the area of breach of fiduciary *614 obligation clearly limits damages which are awarded against a partner because of a breach of fiduciary duty to the breaching partner's interest in the partnership. The majority opinion arrived at a similar result by saying that there cannot be "double recovery for the same injury." There should be no such double recovery theory because there are no individual damages to the partners over and above, and separate from, their interest in the partnership. Although La.C.C. art. 2809 provides that a fiduciary duty is owed both to the partnership and the partners, this means that an action can be brought in either capacity, but not in both capacities. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La.C.C. art. 12. The Legislature could not have intended two entirely separate and independent causes of action for injured partners based on the same set of facts.
If there had been no breach of a fiduciary obligation the defendants would have been entitled to continue in the line of business in which they were familiar and had achieved success. Such an endeavor, in all probability, would have been a valuable undertaking. Such value would undoubtedly have been largely attributable to the collective financial position, long standing good will and extensive business experience which the defendants possessed. These attributes existed separately and independently of the breaching conduct and should not be combined for purposes of determining the "resulting profits" used as the measure of damages under La.C.C. art. 2809. A skilled eye surgeon has an inherent ability to produce a high income. That inherent quality should not be considered part of the resulting profits if he should breach a fiduciary obligation with his former partners and begin a new enterprise. Thomas A. Thibaut and F. Michael Smith, who were in long-term managerial positions in the partnership, were key men to the operation of the business. The majority finds that "The damages sustained in this case were suffered by the partnership at the moment the defendant partners initiated their secret plan to take over the business of the partnership." I believe that some damage occurred when the plaintiff partners decided to dissolve the business and separate themselves from the key men in the operation. The plaintiffs' failure to mitigate their damages was not considered by either the trial court or the majority rendition. Mitigation of damages is the functional equivalent of comparative fault within the framework of a damage claim for breach of contract. In short, the plaintiffs caused some of their own damages and this should be taken into account in the final damage determination of this case.
In the jurisprudence, all of the cases which found a breach of fiduciary duty have limited recovery to reestablishment of the partnership interest or some type of judgment that makes the victim partner whole again in relation to his partnership interest. In the case of W.A. McMichael Construction Company v. D. & W. Properties, 356 So.2d 1115 (La.App. 2d Cir.), writ denied, 359 So.2d 198 (La.1978), the defendant partner deceived the plaintiff partners into thinking that the prospects for leasing partnership property were bleak. Defendant then leased the partnership property without telling the plaintiff partners, then induced the plaintiff partners to sell him their share in the partnership and withdraw from the partnership. The court found the defendant partner had breached the fiduciary obligation to the plaintiff partners, set aside the sale of the plaintiff partners' interest in the partnership and restored plaintiff partners to their former position of ownership of 38.9 percent of the partnership. In the case of Lowry v. Cobb, 9 La.Ann. 592 (1854), the court found that where a partner clandestinely stipulates for a private benefit, preferring his own interest to the firms, he will be compelled to share the fruits of his labors with his associates in the partnership. *615 In Lowry, the damages were limited to one real estate transaction (as in McMichael). In Jansen v. Bellamore, 147 La. 900, 86 So. 324 (La.1920), the court found that a lessee and sublessee of store premises had entered a partnership, and therefore, the renewal of the lease benefitted them both. The court found that the lease renewal belonged to the parties in the same proportions as the old lease, and neither party could deprive the other of his share of the benefits of the partnership relationship.
In Decatur-St. Louis Combined Equity Properties, Inc. Venture v. Abercrombie, 411 So.2d 677 (La.App.1982), the partnership and plaintiff partners brought an action seeking a declaratory judgment vesting title to certain property in the name of the partnership. The plaintiffs alleged that the defendants purchased property for the partnership, which property was placed in individual names for convenience. The appeals court reversed the trial court, which had sustained the defendants' exception of no cause of action, and found that a partner can purchase property in his own name on behalf of the partnership, and while legal title may vest in the individual, equitable title vests in the partnership, and a suit for declaratory judgment was the appropriate action to have the partnership declared to be the owner of the subject property.
Just because the cases on breach of fiduciary duty to partners have limited recovery to reestablishment of the partnership interest or some type of judgment that makes the victim partner whole again in relation to his partnership interest, that does not mean there cannot be tortious or other type of conduct committed by a breaching partner which would bring about individual damages to a former partner. Sometimes the same conduct can be both a tort and a breach of a fiduciary duty. An example of this is found in the case of Makar v. Stewart, 486 So.2d 166 (La.App. 3rd Cir.1986), wherein the court found there was not only a breach of fiduciary duty, but also a clear tort (wrongful conversion of property) for which a separate and independent damage claim would lie. No separate tort was found by the majority, or for that matter, ever presented to the jury in the interrogatories in the case sub judice. In summation, nothing should be added to the damages for breach because of inherent economic qualities of the breaching partners and where the nonbreaching partners have contributed to their own damage, there should be a deduction. (The deduction in value used by the defense expert for being unwilling to sign a no compete agreement does not cover the deduction for failure to mitigate damages.)
Since the majority rendition entirely rejects the evaluation of the plaintiff's expert, Drex Martin, I find it of little or no value in this case and I believe that the award of expert witness fees should be $2,000 rather than the $15,000 awarded.
In conclusion, for all of the reasons stated, I concur in the ultimate decision to reverse, but respectfully disagree with the rendition on the points and issues outlined above.
NOTES
[1] The 50% interest in the partnership belonging to the James Group was owned as follows: James H. Thibaut15%, Margaret Thibaut Watson10%, Mary Elizabeth Thibaut Rives10%, the Constance Elizabeth Thibaut Trust3.75%, the Sally Clarice Thibaut Trust3.75%, the Alma Louise Thibaut Trust3.75%, and the David D. Thibaut, Jr. Trust3.75%.
[2] The remaining 35% interest in the partnership is owned by F. Michael Smith, III7.5%, Eugenia Smith Mueller7.5%, Jane Thibaut Boyce 10%, and Thibaut, Inc.10%.
[3] The defendant partners are Thomas A. Thibaut, F. Michael Smith, III, Eugenia Smith Mueller, Jane Thibaut Boyce, and Thibaut, Inc.
[4] Each group incorporated a separate entity in which to house the continued business of the partnership in the event that it was successful in taking over the partnership's business. The Thomas Group filed articles of incorporation on behalf of Thibaut Oil Company, Inc., and the James Group filed articles of incorporation on behalf of the Thibaut Distributing Company. Prior to the Thomas Group's effort to take over the partnership's business, neither of these corporations were engaged in any type of business.
[5] The petition in reconvention alleges, and the pleadings show, that the actions complained of dealing with the appointment of a Liquidator took place in November 1984 and January 1985. The temporary restraining order complained of is alleged to have been issued on November 19, 1984. The judgment of contempt rendered against Thomas A. Thibaut, F. Michael Smith, III, and Thibaut Oil Company, Inc. was tried and decided on April 4, 1985, and the settlement conference, in which offensive statements are alleged to have been made, took place during the week following January 15, 1985.
[6] This finding is discussed extensively in Part IV, section C of this opinion titled "Peremption of UTACPL Claim."
[7] Comment (c) of La.Civil Code art. 2809 provides:

If a partner engages in an activity in breach of his fiduciary duty, and profits result therefrom, for the partnership to recover the profits for which the partner is accountable, either the partner must be allowed to recoup his original investment in the activity or the partnership must contribute its share of the investment.
[8] The entire record in the liquidation proceeding was introduced into evidence in the trial of the exceptions and the recusal motion. It was not included in the record on appeal.
[9] Defendants spend a great deal of time attempting to persuade this court that the termination date is crucial in determining liability. However, the defendants lose sight of the fact that they secretly conceived, planned, and began to carry out their scheme to dissolve the partnership and transfer its business to their newly formed corporation prior to the date that the petition for liquidation was filed on behalf of the partnership. It is clearly evident that the partnership sustained injury at the moment the defendants initiated their plan to transfer the partnership's business into the corporation.
[10] By examining the ratio between assets and current liabilities and examining the level operating cash, Mr. Martin determined that $750,000 was not needed in the daily operations of the partnership.
[11] The $15,000 awarded for expert witness fees was allocated as follows$10,000 to Drex Martin, $2,500 to Dr. G. Randolph Rice, and $2,500 to Patrick Richard.